McCONNELL, APPELLANT, *v.* CONAWAY ET AL., APPELLEES.

(Decided April 11, 1939.)

*Mr. Walter Dressel,* for appellant.
*Mr. John H. Clark,* for appellees.

MONTGOMERY, J.   The appellant was the owner of a barn which was burned by a known incendiary.   The appellee, The Mutual Insurance Company of Richland township, Marion county, Ohio, had insured the barn in the sum of $500, which amount it paid.   The malefactor, having been arrested and convicted of arson, was sued in the Common Pleas Court by the appellant for the loss sustained.   Judgment was obtained in the sum of $958, no part of which has been paid.   In the meantime the barn-burner had deeded to the appellee, Conaway, a small farm owned by him.   In an action brought to set aside this deed, Conaway was held to be the trustee for the benefit of the creditors of his grantor.   As such trustee he sold the farm and, having paid the preferred liens, there remains in his hands a sum of approximately $585, less any additional costs he may have paid.

The instant suit was brought in the Common Pleas Court to marshal liens and to require the appellee, Conaway, as trustee, to apply the balance in his hands to the payment of appellant's judgment, as aforesaid. The appellee, The Mutual Insurance Company of Richland township, claims the right of subrogation to the extent of the $500 paid by it, and seeks to have such

sum paid to it out of this fund after the payment of costs. On appeal to this court on law and fact a referee was appointed. He made a finding of facts, and, as his conclusion of law, held that the insurance company was entitled to be so subrogated. To his report the appellant has filed exceptions. The appellees have moved its confirmation. There is but one question before this court.

Strange as it seems, the Common Pleas Court, the referee appointed by this court, and counsel on both sides rely upon the case of *Newcomb* v. *Cincinnati Ins. Co.,* 22 Ohio St., 382, 10 Am. Rep., 746. However, the Common Pleas Court, the referee and counsel for appellees, for some reason, light upon one paragraph in the course of the opinion as found upon page 387, but it will be observed that that paragraph constitutes simply a statement of the doctrine of subrogation, as claimed by the losing party in the *Newcomb case.*

The syllabus of the *Newcomb case* is as follows:

"Where a loss, partially covered by insurance, is occasioned by a wrongdoer, against whom the assured, after payment of the insurance, recovers judgment for such loss in an action, to the prosecution of which the underwriter refuses on request to contribute, the assured, in a subsequent proceeding against him by the underwriter for reimbursement, is answerable for no more, if for anything, than the surplus of the amount recovered from the wrongdoer, which may remain after full satisfaction of his uncompensated loss, and the expenses of the recovery."

In the course of the opinion upon page 388, the court, discussing partial insurance, holds that where the assured sustains a loss in excess of the compensation paid by the insurer, he has a right of action against the wrongdoer; that if by such action there comes into his hands more than enough to satisfy his damages he should account to the insurer for the surplus and the insurer is entitled to its right of subrogation; and,

on the other hand, it holds that the assured will not be required to account for more than the surplus after satisfying his own loss in full.

For some reason there seems to have been no pronouncement by the Supreme Court of Ohio on this subject since the *Newcomb case,* which was decided in the December term of 1872; perhaps for the reason that the matter had not been challenged. We find this case cited in many textbooks and paragraph digests and interpreted substantially as we have here interpreted it.

The pronouncements on this question are not recent and presumably this is because the doctrine has not been challenged in recent years. The authors of Ohio Jurisprudence seem to accept this view without question. (See 22 Ohio Jurisprudence, 812, 813 and 818, Sections 715, 716 and 723.)

We find a case reported in 2 C. S. C. R., 186, 13 Dec. Rep., 846, *People's Ins. Co.* v. *Straehle.* This matter of subrogation was but an incident to the decision in that case, and the court, on page 194, says: "As to the insurance company's right of subrogation to Straehle's rights against Thiesing, it has no such right until full payment to Straehle of his loss." A respectable list of authorities is cited sustaining this contention.

We note this point blank statement in 24 Am. & Eng. Ency. of Law (1 Ed.), 309: "The owner must be fully indemnified for the loss of his property, before subrogation will be allowed to the insurer." In support of this proposition the writer quotes Dixon on Subrogation, 155 *et seq.,* and cites a long list of reputable authorities.

For a discussion of this proposition attention is directed to an annotation in 9 A. L. R., 1607.

The editors of digests and of annotations may not be the best authorities, but it is significant that all of them whom we have investigated have accepted this

theory of subrogation under such cases, and that all of
them have a substantial list of authorities sustaining
their views.  As intimated heretofore, the significance
of it is that the doctrine seems not to have been chal-
lenged until challenged in the instant case.

Not only is this the holding of an unbroken line of
authorities, but it also, certainly, is the rule of reason.
The insurance company wagered the sum of $500, on
the chance of this barn being burned.  It agreed to in-
demnify McConnell to that extent.  It could not be
concerned with his success in recovering the remainder
of his damage from the one responsible for the fire.
Of course, if the one so responsible had paid the full
extent of the loss, the insured should not claim both
sums, and the insurer then might well assert its claim
to subrogation, but that is not the situation before us.

The insurance company makes the additional claim
that it is entitled to this money by reason of an assign-
ment of it to the company by the wrongdoer, directed
to the defendant, Conaway.  The latter had been de-
creed to be a trustee for creditors.  One of the creditors
was McConnell.  The company itself was not a credi-
tor.  Its claim results solely from its contract with
McConnell and the possibility of a subrogation to his
claim against his debtor.

The exceptions to the report of the referee are sus-
tained.  The motion to confirm the report is denied.
The trustee is directed to pay all costs ordered paid
by the Common Pleas Court, all costs made in this
court, a fee to the referee, to be agreed upon by coun-
sel, if possible, and the balance to the appellant, Mc-
Connell.

*Decree accordingly.*

SHERICK and LEMERT, JJ., concur.