**MARYLAND CASUALTY CO., Plaintiff-Appellant v. JOHN F. REES CO., Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 3478. Decided December 15, 1942.

Welles, Kelsey, Coburn & Harrington, Toledo, and Fred A. Smith, Toledo, for appellant, Maryland Casualty Co.

Luther L. Boger, Columbus, and J. Maxwell Maher, Columbus, for appellee, The John F. Rees Co.

### OPINION

By GEIGER, P. J.

The plaintiff-appellant filed a petition, stating as its first cause of action that it executed to the defendant a fidelity bond indemnifying defendant against loss by reason of any act or wrongful transaction of any of its employees while performing the duties of any position named in the bond, in an amount not exceeding $2000.00. Said bond provided that upon the payment of any loss the surety shall, to the extent of such payment, be subrogated to any and all rights of the employer, and the employer shall execute all necessary papers and render the surety company all assistance to secure to the surety company the rights to which it is subrogated. While said bond was in force the defendant claimed that one of its employees named Taylor had embezzled funds from the defendant in excess of the amount covered by the bond for the position held by

the said Taylor, and thereupon the plaintiff-appellant paid to the defendant the sum of $2000.00 in full payment of all liability under said bond by reason of the default of Taylor, "plaintiff thereby becoming to the extent of such payment subrogated to any and all rights of the defendant against the said Albert E. Taylor". It is asserted that without the plaintiff's knowledge or consent and in disregard of its rights of subrogation and in breach of the specific terms of said bond, defendant executed a receipt and release which recited that "in consideration of the payment to John F. Rees Company of the sum of $1700.00 by Silas M. Thurlow, * * * the Rees Company hereby releases all claims and demands of every kind and nature which it has or claims to have against Albert E. Taylor".

The plaintiff alleges that such breach of said contract has made it impossible for the plaintiff to secure any reimbursement whatever from said Albert E. Taylor, to the plaintiff's damage in the sum of $3581.70.

The second cause of action sets up matters which are not hereof importance, for the reason that they are not before this court for review. The plaintiff prays judgment against the defendant in the sum of $4781.00, with interest.

To the first cause of action stated in the petition the defendant, The Rees Company, files a general demurrer "for the reason and on the ground that the same does not state facts sufficient to constitute a cause of action against the defendant".

A motion is also made by the defendant that the court order the plaintiff to make its petition more definite and certain in respects not now necessary to state.

On February 17, 1942, the court made an order reciting that the action came on for hearing on the demurrer to the first cause of action and the motion to make the second cause more definite and certain. It was by the court then ordered that the demurrer to the first cause of action be sustained, and that the motion to make definite and certain be sustained in part and overruled in part. The plaintiff not desiring to plead further, the cause was dismissed.

The Casualty Company gave notice of appeal on questions of law to this court from the above recited order.

This case was before this court on two former occasions and this court made orders which do not affect the present cause of action and need not be reviewed.

The matters decided by the court in reference to the second cause of action not having been presented to us may also be passed without further comment.

Elaborate briefs have been filed by each party, the plaintiff-appellant claiming that the court erred in sustaining the demurrer, and the defendant-appellee urging that the court did not err.

We have carefully analyzed the argument of counsel and the cases cited by each, and are content to say that we rely upon a few

decisions by Ohio courts, and principles established in Ohio. The matter that has led us to our conclusion is the fact that the petition fails to state that the defendant-appellee received through the payment of the $2000.00 by the Insurance Company, plus the addition of $1700.00 paid by a subsequent compromise with the defaulting employee, a sum equal to or greater than the amount that it lost as a result of the defalcation of this employee, the principle seeming to be well established that until the party insured has been fully compensated for its loss, that the insurer has no cause of action by subrogation or otherwise against the insured.

The first Ohio case to which we will direct attention is that of **Newcomb v. Insurance Co., 22 Oh. St., 382.** The syllabus in that case is as follows:

"Where a loss partially covered by insurance, is occasioned by a wrongdoer, against whom the assured, after payment of the insurance, recovers judgment for such loss in an action, to the prosecution of which the underwriter refuses on request to contribute, the assured in a subsequent proceeding against him by the underwriter for the reimbursement, is answerable for no more, if for anything, than the surplus of the amount recovered from the wrongdoer, which may remain after full satisfaction of his uncompensated loss and the expenses of recovery."

The case at bar instead of involving a suit by the insured against the wrongdoer, the payment in addition to that made by the surety resulted from a compromise through which the insured received additional compensation and because of which it agreed to release all claims and demands which it has or claims to have against the wrongdoer. We do not see that the difference between the two causes of action in this respect lessens the importance of the principle announced. The court in the Newcomb case points out the fact that there are two classes of insurance, one denominated full insurance and the other partial insurance. The court states that in case of partial insurance, both the assured and the underwriter had each an interest in the claim against the wrongdoer, whereas in case of full insurance and compensation the interest of the assured is but nominal. In the case now before us the insurance was but partial, being limited to the sum of $2000.00.

The court in the Newcomb case further states, where the assured in the case of partial insurance sustains a loss in excess of the reimbursement by the underwriter he has an undoubted right to have it satisfied by actions against the wrongdoer. If by such action there comes into his hands any sum for which he ought to account to the insurer, reimbursement will to that extent be compelled, in an action by the insurer based on his right in equity to subrogation.

"But the assured will not, in the forum of conscience, be required to account for more than the surplus, which may remain in his hands after satisfying his own excess of loss in full, and his reasonable expenses. * * *"

McConnell, Appellant, v. Conaway et, Appellees, 62 Oh. Ap., 335, holds:

"An insurer having paid the amount of a policy issued on a building destroyed by an incendiary, will not be subrogated to the claim of the insured against the wrongdoer, unless and until the insured has been indemnified fully for his loss."

This is an interesting case and reviews many pertinent decisions, especially relying upon Newcomb v. Insurance Company, 22 Oh. St., 382. The court, after reviewing several cases, states in substance, not only is this the holding of an unbroken line of authorities, but it also certainly is the rule of reason. After the insurance company had paid the amount of its policy it could not be concerned with the success of the insured in recovering the remainder of his damage from one responsible for the fire. "Of course if one so responsible had paid the full extent of the loss, the insured should not claim both sums and the insurer might well assert its claim to subrogation, but this is not the situation before us."

The case of Blair, Superintendent of Banks v. Board of Education, 38 Oh. Ap., 303, was one considered by this court; opinion by Judge Kunkle, concurred in by Hornbeck and Allread, announced April 11, 1930, is of interest in the determination of the present controversy. The syllabus is to the effect that where a depositor in a bank has his deposit secured to a limited amount by a bond, but at the time of the insolvency of the bank has a deposit greatly in excess of the amount of the bond, and the assets of the bank are not sufficient to pay all creditors in full, the bonding company, after paying the depositor the amount named in the bond is not entitled to subrogation pro tanto to the amount paid by it on the bond; nor can it have the amount paid by it deducted from the claim of the depositor and receive a pro rata share of the dividends on the amount so paid, nor is it entitled to have its claim allowed as a general creditor and share in the funds as such.

While this case is not identical with the case at bar, yet the principles seem to be applicable.

It is stated in 22 O. Jur., p. 814, §716, after an examination of the pertinent cases,

"In fact, full payment of the loss is a condition precedent to the insurer's right of subrogation, part payment not giving such right."

See also §717.
In A. L. R., 9, page 1607, it is stated:

"An insurer is not entitled to be subrogated to the rights of the insured unless the payment by the insurer constitutes full satisfaction of the claim of the insured against the person as to whom subrogation is sought." Citing a large number of cases sustaining the proposition.

The case of Maryland Casualty Co. v. C. C. C. & St. L. R. Co., 124 N. E., 774 is cited, wherein it is held that the right of subrogation did not exist in favor of the insurance company until the entire amount of the award has been paid.

See also **Fire Insurance Society v. Stang, 18 O. C. C., 464**; U. S. v. National Surety Co., 254 U. S. Supreme Court Rep., 73; Jenkins, Receiver v. National Surety Co., 277 U. S. 258; Globe & Rutgers Fire Ins. Co. v. Truesdell, 60 Ont. L. R., 234.

Counsel for plaintiff-appellant cites a number of cases and textbooks seeking to support his position, among them being Couch's Enc. of Insurance, Vol. 8, 2019; Stearn's Law of Suretyship, Sec. 260.

Counsel for appellee urges that the case at bar is simply an action for breach of the contract, the breach referred to in the first cause of action being the defendant's action in completely releasing the embezzler from all liability to either the defendant or the plaintiff, making it impossible for the plaintiff to recover from the embezzler. Whatever interpretation may be put upon the pleading to which the demurrer was filed, we do not see, as claimed, that under the first cause of action the defendant completely released the embezzler from all liability to either the defendant or the plaintiff, whereby it was made impossible for the plaintiff to recover from the embezzler. Under the facts pleaded it is alleged that the insured entered into an agreement with the embezzler to release him from further obligation upon the payment of the $1700.00. The defendant did not attempt to give a release to the embezzler of the claim made that the plaintiff had against him by virtue of the embezzlement, and we do not follow counsel in the statement to that effect, nor in the statement, "making it impossible for the plaintiff to recover from the embezzler." Counsel states the only question involved in this case is whether or not the defendant could voluntarily settle with the embezzler and give him a complete release of the plaintiff's claim as well as the defendant's claim, all without the plaintiff's knowledge or consent.

In other words, is the defendant liable for the destruction of the plaintiff's right to collect $2000.00 from the embezzler. Our answer is, as above stated, that there was no attempt to give to the embezzler a release of plaintiff's claim. The only release was that of the defendant.

We have read the other cases cited by counsel for plaintiff-appellee and cannot discover that they establish principles contrary to those cited, to the effect that no recovery may be had by the insurer until the insured be fully compensated for its loss.

We are of the opinion that the court below did not err in sustaining the demurrer.

Judgment of the court below affirmed.

HORNBECK and BARNES, JJ., concur.